UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HOLLY BAKER,

                      Plaintiff,

        -against-

WAL-MART STORES EAST, L.P.,

                      Defendant.
-------------------------------------------------------------X

**OPINION AND ORDER**

21 Civ. 10629 (JCM)

       Plaintiff Holly Baker ("Plaintiff") brought this action against Defendant Wal-Mart Stores East, L.P. ("Defendant" or "Walmart") to recover for personal injuries allegedly sustained as a result of a fall at the Defendant's Walmart store in Newburgh, New York, on January 18, 2020. (Docket No. 3-1).  Presently before the Court is Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (Docket No. 19).  Defendant's motion is accompanied by a memorandum of law, (Docket No. 21) ("Def. Mtn." or "Motion"), an Affirmation, (Docket No. 20), and a Rule 56.1 Statement, (Docket No. 24).  Plaintiff filed an opposition, (Docket No. 25), including a memorandum of law, (Docket No. 25-5) ("Pl. Opp'n"), and a Response to Defendant's Rule 56.1 Statement, (Docket No. 25-4).  Defendant filed a reply memorandum of law, (Docket No. 27) ("Def. Reply"), and a response to Plaintiff's Rule 56.1 Statement, (Docket No. 26).   For the reasons that follow, Defendant's motion is granted.

## I.  BACKGROUND

       The following facts are taken from Defendant's Statement of Material Facts submitted pursuant to Local Rule 56.1 of the United States District Courts for the Southern and Eastern

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket No. 9).

Districts of New York ("Def. 56.1"), (Docket No. 24), Plaintiff's Response to Defendant's 56.1

Statement ("Pl. 56.1 Resp."), (Docket No. 25-4), Defendant's Reply to Plaintiff's Response

("Def. 56.1 Reply"), (Docket No. 26), and the exhibits submitted by the parties in support of

their contentions.[2]  The following facts are construed in the light most favorable to Plaintiff as

the party opposing summary judgment. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d

Cir. 2018).  Any disputes of material fact are noted.

On January 18, 2020, Plaintiff visited Defendant's Walmart store in Newburgh, New

York. (Def. 56.1 ¶ 1; Pl. Dep. at 40).  Plaintiff visited this Walmart store two to three times a

week for "years." (Pl. Dep. at 41).  Upon entering the store, Plaintiff turned right and walked

about five steps as she made her way toward the restroom. (Def. 56.1 ¶ 2; Pl. Dep. at 46-48).

Plaintiff was looking "straight ahead but down" at the ground and she was "watching where

[she] was going" as she walked those five steps; she saw the black rug, and the "end of the black

rug" that was in front of an ice machine. (Def. 56.1 ¶¶ 2-3; Pl. Dep. at 47-48; *see also* Pl. Dep. at

50 ("I was looking straight towards the end of the rug.")).  Plaintiff had seen a rug in front of the

ice machine during previous visits, but did not know whether it was the same rug. (Pl. Dep. at

49).  As Plaintiff took her "first step with [her] right foot...the rug got caught underneath [her]

foot." (Def. 56.1 ¶ 4[3]; Pl. Dep. at 51).  Then, "[a]fter [Plaintiff] started walking the rug got

---

[2] Defendant's Exhibit A is the Verified Bill of Particulars from Plaintiff's state court action. (Docket No. 20-1).
Defendant's Exhibit B is Plaintiff's interrogatory responses in this action. (Docket No. 20-2).  Defendant's Exhibit C
is the deposition transcript of Plaintiff. (Docket No. 20-3) ("Pl. Dep.").  Additionally, Defendant provided four video
clips for the Court's review. (*See* Docket No. 20 ¶ 5).  Two of the clips are 360-degree camera views of the relevant
area of the Walmart store immediately prior to and following Plaintiff's accident. (*See id*.).  The remaining two clips
are "enhanced view[s]" of: (i) "the unknown customer that flipped up the edge of the rug in front of the ice machine
at 1:50:26 p.m."; and (ii) "the plaintiff's fall at 1:53:59 [p.m.]." (*Id*.).  Plaintiff's Exhibit 1 is the deposition
transcript of Jaime Smith (hereinafter "Smith Dep.").  Plaintiff's Exhibit 2 is the deposition transcript of Jacqueline
Baran (hereinafter "Baran Dep.").  Plaintiff's Exhibit 3 is the deposition transcript of Josie Bastion Solomon
(hereinafter "Solomon Dep.").

[3] Plaintiff denied this paragraph of Defendant's Rule 56.1 statement. (Pl. 56.1 Resp. ¶ 4).  However, that paragraph
directly quotes Plaintiff's deposition testimony, (*compare* Def. 56.1 ¶ 4 *with* Pl. Dep. at 51:14-19), with the
exception that the testimony reads "the rug got caught *underneath*" Plaintiff's foot, rather than "the rug got caught

tangled up in [her] other foot and [she] went down." (*Id*.).  As a result, Plaintiff tumbled forward and her left knee hit the floor. (Pl. Dep. at 53-54).  Before she hit the floor, Plaintiff fell into handicap carts that were parked right in front of the mats. (*Id*. at 54).  When asked about the condition of the rug, Plaintiff testified she observed it to be "very thin," but stated that she "believe[d]" it was laying flat on the floor. (*See id*. at 55).  It is undisputed that video depicts another customer walking over the black rug 3 minutes and 33 seconds before Plaintiff tripped on the rug. (Pl. 56.1 Resp. ¶ 6).  Plaintiff disputes that the video footage depicts the unknown customer causing the edge of the rug to "flip up," (Def. 56.1 ¶ 5), but rather submits that the video shows "the near corner of the mat has lifted up near the right wheel of the customer's cart," (Pl. 56.1 Resp. ¶ 5).

Plaintiff deposed three Walmart employees—Jaime Smith, Jacqueline Baran, and Josie Solomon.  Jaime Smith worked at Walmart as an apparel assistant store manager (ASM) or front end coach at the time of Plaintiff's accident. (Smith Dep. at 14).[4]  She was generally responsible for making sure that "everything is set up the way it's supposed to be." (*Id*.).  Ms. Smith did not recall whether she was the manager on duty in the store that day. (*Id*. at 15).  Ms. Smith testified generally that she asked door greeters to let her know if mats "g[o]t wet or if it's dry outside, to remove them and let me know." (*Id*. at 37).  The floor mat outside the ice machine usually remained placed in front of the ice machine, regardless of weather, for safety reasons. (*See id*. at 38).  When asked if she had "ever observe[d] any floor mats of Wal-Mart that the edges were sticking up from the floor" or "weren't flat," Ms. Smith said yes. (*Id*. at 45).  She did not recall

---

*under*" Plaintiff's foot, as transcribed in Defendant's 56.1. (*See id*.).  This transcription error does not impact the Court's analysis.

[4] Ms. Smith was produced as a witness familiar with Walmart's policies and procedures regarding maintenance. (Smith Dep. at 16).

when specifically she had seen mats with stuck up edges or that were not flat. (*Id*.).  When she saw mats that were sticking up or not flat against the floor, either she or maintenance removed them from the floor. (*Id*. at 45-46).  Ms. Smith also testified that she had seen "folded" mats "at Wal-Mart," meaning a mat that "does not lie flat on the floor." (*Id*. at 46).  When she saw a folded mat, she either fixed it or had it removed, and instructed employees to do the same. (*Id*. at 46-47).  Regarding the mat by the ice machine, Ms. Smith recalled telling "an associate that the mat [was] wet…[and] needs to be changed out," and that she "had an associate vacuum it because it was dirty." (*Id*. at 71).

Jacqueline Baran worked at Walmart as an asset protection associate on the date of Plaintiff's accident. (*See* Baran Dep. at 10).  As an asset protection associate, Ms. Baran would "stand at the door…check receipts…take care of the carts…[and] [h]elp customers if they need help finding the items." (*Id*. at 12).  As part of her training, Ms. Baran was told to pick up garbage or debris on the floor, and to clean spills as needed. (*See id.* at 23).  The purpose of the carpet outside the ice machine was "in case there was any water drips from the ice bags as they were taken out of the freezer." (*Id*. at 24).  The carpets were placed by the maintenance department. (*Id*. at 25).  Ms. Baran did not recall observing the mat being folded at any time before Plaintiff's accident occurred. (*Id*. at 30).  She also did not recall observing that the mat needed to "be fixed in any way" before the accident. (*Id*.).[5]  However, Ms. Baran did recall observing the mat being out of place because of "customers using their carts," and "at times" she corrected the position of the mat. (*Id*.).  This did not occur often, and Ms. Baran approximated that she'd have to reposition the mat "once or twice during [her] shift." (*Id*. at 31-32).  When

---

[5] Ms. Baran was asked if she could identify herself as the Walmart employee in the yellow vest who is seen plugging in a handicap scooter next to the mat before the unknown customer arrived and moved the mat, and before Plaintiff's accident.  She stated that the person on the video "could be" her, but she "cannot see it that clear." (Baran Dep. at 27).

asked what "fixing" the mat would require, Ms. Baran stated: "Making sure it was in front of the door so that it was there for a water hazard.  So that's where it was supposed to be." (*Id*. at 32). She had never observed any falls on the mat. (*Id*.).

Josie Solomon worked as a self-checkout attendant at Walmart on the date of Plaintiff's accident. (Solomon Dep. at 14, 25).  Her job was to help customers in the south checkout area of the store. (*Id*. at 26).  Solomon was stationed ten feet away from Plaintiff's accident, and saw her on the floor. (*See id*. at 37).  However, Solomon did not observe Plaintiff falling before she was on the floor. (*Id*. at 38).  Plaintiff told Solomon that "she fell on the mat thing, the rubber mat." (*Id*. at 48).  Solomon confirmed that she had a "clear view" of the mat, and she had never observed anyone falling "in that area." (*Id*. at 57).  When Solomon looked at the mat after Plaintiff fell, it was "fine," meaning that "there's nothing wrong with it, it's perfect, it's flat." (*Id*. at 48-49).  When asked to describe the condition of the mat, she explained: "The mat is fine, perfect, fine, there's nothing. I didn't see nothing wrong with it, it's perfect, flat." (*Id*. at 58; *see also id*. at 64-65 ("When I stand next to her, I looked at the mat and nothing wrong with it.")). Solomon further confirmed that she had not been told about "any issues with the mat where the accident occurred" on the date of the accident. (*Id*. at 64).  Nor had Solomon ever observed the mat to have damaged edges or curled corners. (*Id*. at 76-77).

## II.  SUMMARY JUDGMENT STANDARD

New York state law governs the substantive slip and fall claim.[6]  However, federal law applies to procedural aspects of the claim. *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02 Civ. 4196 (NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) ("We find that the issue of

---

[6] Because jurisdiction over this matter is based upon the parties' diversity of citizenship, and because the accident occurred in New York, the parties agree that New York law governs the substantive claims. (Def. Mtn. at 4; Pl. Opp'n at 6).

what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) and its progeny, and accordingly is subject to federal rather than state law.") (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)); *see also Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  The moving party's burden of proof on a summary judgment motion is procedural, and is therefore governed by federal law. *Hughes v. United States*, No. 12 Civ. 5109 (CM), 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014) (applying the federal burden of proof standard on a motion for summary judgment, explaining that "[e]ven though the substantive claims are governed under New York law, the procedural issues are determined under the federal standard").

The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action. *See, e.g.*, *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12-13 (2d Cir. 2008).  "Under New York law, '[a] defendant who moves for summary judgment in a [sl]ip-and-fall case has the initial burden of making a *prima facie* showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it.'" *Vasquez v. United States*, 14-CV-1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)).  Conversely, under federal law, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Id.* at *5 (quoting *Zeak v. United States*, No. 11 Civ. 4253 (KPF), 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014)); *see also Feis v. United States*, 394 F. App'x 797, 798-

99 (2d Cir. 2010) (applying New York substantive law and federal procedural law, finding that "contrary to plaintiff's assertions, defendant was not required to affirmatively disprove each element of plaintiff's [slip-and-fall] claim.").

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322. A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583 (LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (citation omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citations omitted). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). Under federal law, the moving party may meet its burden of proof simply by pointing to the absence of evidence to support an essential element of the plaintiff's claim. *See Tenay*, 281 F. App'x at 12-13 ("[T]he moving party's burden under Rule 56 will be satisfied if

he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (internal quotation marks and citations omitted).  Therefore, Defendant may meet its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," but need not "raise a *prima facie* case." *Hughes*, 2014 WL 929837, at *4 (quoting *Celotex*, 477 U.S. at 325).  Here, the Court finds that Defendant has met its initial burden by pointing to the absence of evidence in support of Plaintiff's claim, including the failure to establish that Defendant created the condition or had actual or constructive notice of it. (*See generally* Def. Mtn.).

Since the moving party has met this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Holcomb*, 521 F.3d at 137.  "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249-50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Cruz v. Target Corp.*, No. 13 Civ. 4662 (NRB), 2014 WL 7177908, at *3 (S.D.N.Y. Dec. 17, 2014) ("In federal court, it is the plaintiff who, as the nonmoving party, bears the burden of showing a genuine dispute of material fact, even though a New York state court would require the defendant to produce affirmative evidence on the key issue of whether the defendant had adequate notice of the spill.").  In doing so, Plaintiff "'may not rely on conclusory allegations or unsubstantiated speculation,' but must support the existence of an alleged dispute with specific citation to the record materials." *Hughes*, 2014 WL 929837, at *3 (internal citations omitted); *see also* Fed. R. Civ. P. 56(c).  Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson*, 477 U.S. at 248.  If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

In the Southern District of New York, parties moving for and opposing summary judgment motions must also submit short and concise statements of facts, supported by evidence that would be admissible at trial. Local Civ. R. 56.1.  The party opposing summary judgment must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").  However, "uncontested fact[s] cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement"—in the absence of citations or "where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks and citations omitted).  Furthermore, the Court is "not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quotation marks and citations omitted).

## III.  DISCUSSION

Plaintiff claims that a defective condition in the Walmart store caused her injuries. (*See* Def. Mtn. at 1).  Defendant contends that there is no evidence that Defendant: (1) created the condition; (2) had actual notice of the condition; and (3) had constructive notice of the condition. (Def. Mtn. at 4-8).  Plaintiff replies that genuine issues of material fact exist as to whether Defendant had constructive notice of the condition. (Pl. Opp'n at 6-11).

Under New York law, "[t]o establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon by Solomon v. City of N.Y.*, 499 N.Y.S.2d 392, 392 (1985) (citations omitted).  Here, Defendant does not dispute it had a duty to its customers to keep its store reasonably clear of any defective or dangerous conditions. (*See generally* Def. Mtn.).  However, Defendant maintains that Plaintiff failed to adduce evidence demonstrating that Defendant breached its duty. (*Id.* at 4-8)

To make out a breach of duty in a premises liability case, specifically, a plaintiff must first show "the existence of a dangerous or defective condition." *Vasquez*, 2016 WL 315879, at *4 (internal quotation marks omitted) (citing *Winder v. Exec. Cleaning Servs., LLC*, 936 N.Y.S.2d 687, 687 (2d Dep't 2012)).  Next, "the plaintiff must demonstrate 'that the [defendant] either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it.'" *Tenay*, 281 F. App'x at 13 (quoting *Baez v. Jovin III, LLC*, 839 N.Y.S.2d 201, 202 (2d Dep't 2007)) (alteration in original).  Under New York law, Plaintiff bears the burden of proof on the elements of her premises liability claim at trial. *Id.*

## A.  Existence of a Dangerous Condition

It is undisputed that, before Plaintiff's fall, a defective or dangerous condition existed. (*See generally* Def. Mtn.; Def. Reply).  The evidence submitted supports this fact.  For example, the videos submitted demonstrate that the edge of the rug was "curled" or "flipped up" in Plaintiff's direction as Plaintiff approached. (*See* Clip 2).[7]  Plaintiff also testified that as she took

---

[7] Defendant did not assign exhibit numbers to each of the four video clips submitted.  Accordingly, the Court will refer to: (1) "202211-0054_OSD01_Export__360_SCO_GR_Monday_cropped.mp4" as "Clip 1;" (2) "202211-0054_OSD02_Export__360_SCO_GR_Monday_cropped.mp4" as "Clip 2;" (3)

her "first step with [her] right foot…the rug got caught underneath [her] foot" and "[a]fter [she] started walking the rug got tangled up in [her] other foot." (Pl. Dep. at 51).  This constitutes sufficient evidence at the summary judgment stage to establish that the edge of the rug was flipped up and, thus, a dangerous condition existed. *See Coulter v. Barbeque Integrated, Inc.*, No. 5:20-CV-0533 (GTS/ATB), 2022 WL 3444953, at *6 (N.D.N.Y. Aug. 17, 2022), *appeal withdrawn*, No. 22-2034, 2022 WL 19005660 (2d Cir. Dec. 19, 2022) (concluding that "before Plaintiff's fall, a dangerous condition did indeed exist in the form of a 'bunched up' or 'folded up' carpet or rug in the entrance to Defendant's restaurant" where, *inter alia*, Plaintiff testified that "she felt the toes of her right foot 'catch the rug'"); *see also Richardson-Dorn v. Golub Corp.*, 676 N.Y.S.2d 260, 261 (3d Dep't 1998) (treating "bunched up" rug in entranceway as dangerous condition); *Rabadi v. Atl. & Pac. Tea Co.*, 702 N.Y.S.2d 316, 317 (2d Dep't 2000) (treating "rolled up" carpet as dangerous condition).

## B. Creation of a Dangerous Condition

Defendant argues that Plaintiff has adduced no evidence that Defendant created the defective condition. (Def. Mtn. at 4).  The mere existence of a dangerous condition does not establish a breach of the duty of care. *See Castellanos v. Target Dep't Stores, Inc.*, No. 12 Civ. 2775 (GWG), 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013).  "To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant." *Vasquez*, 2016 WL 315879, at *7 (citing *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014) and *Gonzalez v. Wal–Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004)).  "Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that Defendant created the condition through

---

"RM2020012200436_Clip00001_converted.mp4" as "Clip 3;" and (4)
"RM2020012200436_Clip00002_converted.mp4" as "Clip 4."

affirmative acts, [a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Decker v. Middletown Walmart Supercenter Store #1959*, 15 Civ. 2886 (JCM), 2017 WL 568761, at *5 (S.D.N.Y. Feb. 10, 2017) (quotation marks and citations omitted).

Plaintiff presents no arguments that Defendant created the dangerous condition. (*See* Pl. Opp'n). Nor has Plaintiff introduced any circumstantial evidence supporting an inference that a Walmart employee caused the condition. Indeed, Plaintiff's opposition brief "does not [even] address this prong of premises liability." *Ricci v. Wal-Mart Stores E., LP*, 16 Civ. 6920 (JCM), 2018 WL 4308556, at *6 (S.D.N.Y. Sept. 10, 2018). "[A]bsent evidentiary proof in admissible form . . . , the plaintiff has not raised a triable issue of fact." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 331 (E.D.N.Y. 1998). Thus, because "[n]o evidence (or even argument) has been adduced that Defendant created the dangerous condition," "[t]he Court need not linger on th[e] question[]." *Coulter,* 2022 WL 3444953, at *7. Accordingly, the Court finds that Plaintiff has not established any genuine issue of material fact that Defendant created the dangerous condition.

## C. Actual Notice of a Dangerous Condition

Because Plaintiff presents no evidence that Defendant created the dangerous condition, Plaintiff must demonstrate either actual or constructive notice of the condition. *See Quarles*, 997 F. Supp. at 332. "A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall." *Decker*, 2017 WL 568761, at * 6 (quoting *Cousin v. White Castle System, Inc.*, No. 06-CV-6335 (JMA), 2009 WL 1955555, at *7 (E.D.N.Y. July 6, 2009)); *see also Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) ("Actual notice requires that a

defendant receive complaints or similarly be alerted to the existence of the dangerous condition.").

First, for the reasons stated above, Plaintiff has offered no evidence that Defendant created the condition.  Second, Plaintiff sets forth no arguments that Defendant had actual notice of the condition.  Third, there is no evidence that Defendant was actually aware of the "curled up" edge of the carpet that caused Plaintiff's fall.  For example, Defendant's employees did not testify that they personally observed the "flipped up" edge of the rug in the approximately three-and-a-half minutes that elapsed between the unknown customer flipping the edge of the carpet and Plaintiff tripping over the carpet's edge.  Indeed, Plaintiff testified that she did not see it, although she was "looking [down] straight towards the end of the rug" as she walked towards it. (Pl. Dep. at 50).  Moreover, there is no evidence that Defendant received reports of the condition. In short, Plaintiff has provided no evidence that Defendant had actual notice of the condition. Accordingly, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding actual notice. *See Quarles*, 997 F. Supp. at 332 ("There is no evidence suggesting that Radisson, or its employees, were aware of the [condition], and therefore the defendants did not have actual notice of the condition."); *Coulter*, 2022 WL 3444953, at *7 (holding the defendant did not have actual notice of "bunched up" rug where the plaintiff did not provide "any evidence (or even argument) … that Defendant had actual notice of the dangerous condition"); *Ricci*, 2018 WL 4308556, at *7 (holding the defendant did not have actual notice of hangers on the floor where the plaintiffs did "not adduce[] evidence that Defendant's employees saw the hangers on the floor prior to [the plaintiff's] fall" and the plaintiffs did not "submit[] any evidence that Defendant received complaints about the hangers on the floor prior to [the plaintiff's] fall").

**D.  Constructive Notice of a Dangerous Condition**

Having determined that Plaintiff has failed to raise a genuine issue of material fact that Defendant either created or had actual notice of the dangerous condition, the only remaining issue for resolution is whether Defendant had constructive notice of the condition.  Defendant argues that Plaintiff cannot raise a genuine issue of material fact regarding constructive notice because: (i) there is no evidence that the condition was visible and apparent, and (ii) the condition did not exist long enough to charge Defendant with constructive notice. (Def. Mtn. at 5-7).  Plaintiff counters that a material issue of fact exists as to Defendant's constructive notice because: (i) given the location of the rug, a "jury could properly infer that it should not have taken long for Defendant's employees to discover it," and (ii) there is no single timeframe that is considered "reasonable" for purposes of constructive notice. (Pl. Opp'n at 6-9).  Additionally, Plaintiff argues that Defendant had actual knowledge that the rug near the ice machine routinely curled, and therefore, Defendant can be charged with constructive notice of this specific recurrence of that condition. (Pl. Opp'n at 10-11).  Defendant replies that Plaintiff has failed to elicit testimony or other evidence establishing that the rug in front of the ice machine routinely bunched or curled, and that a general awareness that floor mats occasionally bunch is insufficient to charge Defendant with constructive notice. (Def. Reply at 5-6).

"To prove liability based on constructive notice, the danger must have been 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'" *Nussbaum*, 603 F. App'x at 12 (quoting *Lemonda v. Sutton*, 702 N.Y.S.2d 275, 276 (1st Dep't 2000)) (alteration in original); *see also Pinnock v. Kmart Corp.*, No. 04 Civ. 3160 (RMB), 2005 WL 3555433, at *3 (S.D.N.Y. Dec. 29, 2005) ("Constructive notice can be shown by testimony that a condition is 'visible and apparent' and has existed 'for a sufficient length of time prior to the accident to permit defendant's employees

to discover and remedy it.'") (quoting *Heit v. Supermarkets Gen. Corp.*, No. 93 Civ. 6871, 1995
WL 559489, at *1 (S.D.N.Y. Sept. 20, 1995)).

## 1.   Length of Time

Defendant argues that there is no genuine issue of material fact that the defect existed
long enough to charge Defendant with constructive notice. (Def. Mtn. at 7).  Specifically,
Defendant argues that three minutes and thirty-three seconds is "an insufficient amount of time
pursuant to established New York law for Walmart to have both discovered and remedied the
flipped-up edge of the mat." (*Id.*).  Plaintiff counters that "there is no set time frame which is
considered 'reasonable' for the purposes of constructive notice…so long as the defect existed for
a sufficient period of time for the Defendant's employees to have seen and remedied the defect."
(Pl. Opp'n at 7).  "'Constructive notice requires a showing of a hazardous condition that was not
only visible and apparent before the accident, but also in existence a sufficient length of time to
allow the defendant to observe and remove it.'" *Ortiz v. Wal-Mart Stores E., LP*, No. 17 Civ. 945
(NSR), 2019 WL 1171566, at *6 (S.D.N.Y. Mar. 13, 2019) (quoting *Grier v. R.H. Macy & Co.,
Inc.*, 173 A.D.2d 238, 238 (1st Dep't 1991)).

Here, it is undisputed that the videos demonstrate that the edge of the carpet was flipped
up for about three minutes and thirty-three seconds before Plaintiff's fall.  (Pl. 56.1 Resp ¶ 6; Pl.
Opp'n at 8).  New York courts have consistently held comparable, if not greater, periods of time
are insufficient to charge a defendant with constructive notice because it would not provide a
defendant with sufficient time to remedy the condition. *See Aguilera v. BJ's Wholesale Club,
Inc.*, 179 N.Y.S.3d 59, 60 (1st Dep't 2022) ("[Plaintiff] submitted no evidence of actual notice
and, viewing the record in the light most favorable to plaintiff, defendant had as little as 4
minutes and no more than 30 minutes, to find the condition plaintiff slipped on and remediate it,

which is 'an insufficient period of time to charge defendant with having constructive notice'")
(quoting *Frederick v. New York City Hous. Auth*., 100 N.Y.S.3d 258, 259 (1st Dep't 2019));
*McClarren v. Price Chopper Supermarkets Inc*., 640 N.Y.S.2d 702, 702 (3d Dep't 1996) (no
constructive notice where "defendant submitted plaintiff's deposition testimony and the
deposition testimony and affidavits of store employees indicating that the aisle where plaintiff
fell had been inspected approximately 3 to 5 minutes prior to the accident and found to be clean
and dry"); *Rosario v. Haber*, 45 N.Y.S.3d 462, 462 (1st Dep't 2017) ("Defendants established
prima facie that they did not have constructive notice of the puddle, i.e., that they did not have an
opportunity before plaintiff's accident to discover and remedy the condition on the stairs,
through plaintiff's testimony that, two minutes before the accident, she had ascended the stairs
without incident and had not noticed the puddle"); *Frederick*, 100 N.Y.S.3d at 259 ("Viewing the
record in a light most favorable to plaintiff, defendant had less than 30 minutes to find the urine
before the caretaker left work for the night. This is an insufficient period of time to charge
defendant with having constructive notice."); *Cantalupo v. John Anthony's Water Cafe*, *Inc*., 721
N.Y.S.2d 397, 398 (2d Dep't 2001) (no constructive notice where "plaintiffs noticed the puddle
15 or 20 minutes before the accident"); *Coulter*, 2022 WL 3444953, at *8  (noting that "if the
'bunch[ing] up' [of the carpet] occurred mere minutes or seconds before Plaintiff's fall (and it is
mere speculation that it did not), a reasonable amount of time would not have existed for
Defendant to remedy the dangerous condition").  Accordingly, the Court finds that Plaintiff has
not met her burden of raising a triable issue that the condition existed a sufficient length of time
so as to charge Defendant with constructive notice.

Plaintiff relies heavily on *Thaqi v. Wal-Mart Stores E., LP*, No. 09-CV-755 (JMA), 2014
WL 1330925 (E.D.N.Y. Mar. 31, 2014), for the proposition that as little as one minute is

sufficient to charge a defendant with constructive notice. (Pl. Opp'n at 7-9).  However, *Thaqi* is factually and legally inapposite for several reasons.  First, in that case, according to an incident report, two Walmart employees were told about the liquid spill shortly before the plaintiff fell. *Id*. at *1-3, 10.  There are no similar reports to Walmart employees here.  Second, in *Thaqi*, Walmart's failure to preserve videos of the accident entitled the plaintiff to an adverse inference regarding Walmart's actual notice, which was "sufficient to defeat summary judgment." *Id*. at *6.  Third, the Court found triable questions of fact existed for constructive notice because an unidentified employee had seen a child, who looked like liquid had been spilled on her shirt, throw a cup into the garbage shortly before the plaintiff's fall, but did not go to inspect the floor for liquid. *Id*. at *10.  The unidentified associate observed this shortly before another employee was informed of the liquid on the floor and went to investigate. *Id*.  The Court concluded that "[a] jury could conclude that if the unidentified associate had promptly investigated the potential spill and called for maintenance, maintenance would have arrived before plaintiff's fall…[and] even if maintenance would not have made it to the spill in time, the unidentified associate may have had sufficient time to walk over to the spill and guard it until maintenance arrived." *Id*. Therefore, even putting aside that the court's holding as to constructive notice was arguably dicta, crucial to that holding was the fact that two different employees were alerted to the possible existence of liquid on the floor immediately before the plaintiff's fall.  Here, Plaintiff has not adduced any evidence that any employees were aware of the rug's condition in the three minutes and thirty-three seconds after the unknown customer caused the edge to curl. Accordingly, the Court finds *Thaqi* distinguishable, and not controlling.

**2. Visible and Apparent**

Even assuming, *arguendo*, that Plaintiff raised a triable issue regarding the length of time that the edge of the rug was curled, Plaintiff's "failure to present any evidence other than speculation that the [condition] was visible and apparent to [Walmart's] employees is fatal to her claim of constructive notice." *Castellanos,* 2013 WL 4017166, at *6.  The video footage provided shows numerous customers walking in close proximity to the rug in either direction in the three-and-a-half minutes that elapsed between the unknown customer causing the edge of the rug to flip over and Plaintiff's accident. (*See* Clip 4).  None of the customers walking by seem to notice the curled edge. (*See id*.).  Additionally, no Walmart employees testified that they observed the rug near the ice machine flipped or curled during the time of Plaintiff's accident. (*See, e.g*., Baran Dep. at 30; Solomon Dep. at 57-58, 77).  Moreover, Plaintiff's assertion that "[t]he raised corner of the rug may have been visible for even longer," (Pl. Opp'n at 8), is entirely speculative and is lacking evidentiary support.  Accordingly, because Plaintiff has presented no evidence that the condition was visible and apparent, she has failed to raise an issue of fact with respect to constructive notice. *See Castellanos*, 2013 WL 4017166, at *6 (no constructive notice where the plaintiff and other witnesses testified they did not see the condition before the fall and "the video [did not] suggest that any of the dozens of customers or employees that walked through the area in the 25 minutes prior to the accident—many of whom were pushing shopping carts—were impeded in any way by" the condition, and "[n]one of them even appear to look at the portion of the ground where the accident occurred"); *Bogery v. United States*, No. 17-CV-6996 (VEC), 2018 WL 4265901, at *5 (S.D.N.Y. Sept. 6, 2018) ("Even if Plaintiff had evidence that the puddle existed long enough to have been noticed, Defendant is correct that she has not presented evidence to prove the other component of this test; Plaintiff has

adduced no evidence that the puddle was visible, even though she acknowledges that this is part of the legal standard.").

Furthermore, as noted above, Plaintiff testified that she was "looking straight towards the end of the rug" as she walked and that she was "watching where [she] was going." (Pl. Dep. at 50, 47).  However, Plaintiff did not testify that she observed the condition prior to her fall, and Plaintiff concedes in her opposition papers that she did not "see the defect prior to her fall." (Pl. Opp'n at 8).  Courts in this Circuit "have found insufficient evidence to raise a triable issue of fact regarding whether a condition was visible and apparent where a plaintiff did not see the condition prior to a fall, or offer evidence that others saw the condition prior to the fall." *Decker*, 2017 WL 568761, at *7 (collecting cases); *see also Nasca v. Wal-Mart Stores, Inc.*, 8 F. Supp. 2d 235, 237 (W.D.N.Y. 1998) ("Since the plaintiff here did not see the liquid on the floor prior to falling, despite looking forward and down, it cannot be said that the spill was visible and apparent.").

Plaintiff argues that "the one witnesses [sic] testimony, standing alone, is sufficient to raise an issue of fact as to notice," but does not specify what witness or testimony she is referring to. (Pl. Opp'n at 6).  To the extent that Plaintiff is referring to Solomon's testimony that she was ten feet away from the area when Plaintiff's accident occurred, (*see* Solomon Dep. at 37), such proximity, alone, is insufficient to establish constructive notice. *See Coulter*, 2022 WL 3444953, at *7 (rejecting argument that the defendant had constructive notice where the plaintiff presented evidence that the employee was "only ten feet away from the accident" and holding that "the mere proximity of the greeter to the offending rug [does not] suffice to give rise to constructive notice to Defendant under the circumstances"); *Ortiz*, 2019 WL 1171566, at *7 ("While Plaintiff is correct that there is evidence that there were three of Defendant's employees in the area of the

dangerous condition prior to the accident …this alone is not enough to show that Defendant had constructive notice."); *Gonzalez v. Kmart Inc*., 13-CV-5910 (PKC) (VMS), 2016 WL 3198275, at *5 (E.D.N.Y. June 8, 2016) ("The mere fact that a Kmart employee may have been close to the spill at the time Plaintiff fell is insufficient to create an inference that the employee saw the spill before the accident or was present long enough before Plaintiff's fall to have had the opportunity to cure the hazardous condition."); *Demelio v. Wal-Mart Stores E., LP*, 21-cv-1900 (AEK), 2023 WL 2480192, at *5 (S.D.N.Y. Mar. 13, 2023) (finding that "the fact that Wal-Mart employees were in the vicinity and did not react to the spill—as they are trained to do—counsels against finding the condition was visible and apparent").  Thus, Plaintiff has failed to present evidence that the condition was visible and apparent.  Accordingly, the Court concludes that there is no genuine issue of material fact that Defendant was on constructive notice of the "flipped up" edge of the rug.

### 3.  Recurring Condition

Plaintiff argues that Defendant was on constructive notice because Defendant had knowledge that "the mats at the Wal-Mart frequently fell out of position, curled, and folded over." (Pl. Opp'n at 11).  Defendant counters that Plaintiff has not elicited testimony from Defendant's employees that they were aware that the mat near the ice machine would routinely curl or bunch, and a general awareness that floor mats occasionally bunch is insufficient to establish constructive notice of a dangerous condition. (Def. Reply at 5-6).

A "recurrent condition" theory "requires 'evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the landlord.'" *Polvino v. Wal-Mart Stores, Inc.,* No. 03-CV-950S, 2006 WL 2711461, at *3 (W.D.N.Y. Sept. 20, 2006) (quoting *Uhlich v. Canada Dry Bottling Co. of N.Y.*, 758 N.Y.S.2d

650, 651 (1st Dep't 2003)).  While a plaintiff does not need to "establish the defendant's knowledge of the existence of the exact [hazard] on which the plaintiff fell," they do need to show that "defendant had ... knowledge of the particular dangerous condition that is 'qualitatively different from a mere 'general awareness' that a dangerous condition may be present.'" *Gonzalez*, 299 F. Supp. 2d at 193 (quoting *Chin v. Harp Mktg.*, 648 N.Y.S.2d 697, 698 (2d Dep't 1996)).  "[A] defendant's 'general awareness' of a dangerous condition on the premises is not legally sufficient to charge a defendant with constructive notice of the particular condition that caused the plaintiff's injury." *Id.*; *see also Riley v. Battery Place Car Park*, 210 Fed. App'x 76, 77 (2d Cir. 2006) (defendant's "'general awareness' of oil leaks by parked cars on its premises" was "legally insufficient to support a finding that the owner had constructive notice of the specific oil patch that caused [plaintiff] to slip and fall"); *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) ("In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue.") (citation omitted); *Gordon v. American Museum of Nat. Hist.*, 501 N.Y.S.2d 646, 647 (1986) (defendant's "general awareness" of litter on the premises was legally insufficient to charge defendant with constructive notice of the paper plaintiff tripped on).

Here, Plaintiff asserts that "the Defendant's witnesses testified that they knew the mats at the Wal-Mart fell out of position, curled, and folded over." (Pl. Opp'n at 11).  While Plaintiff does not provide a citation, the Court understands this to be a reference to Ms. Smith's deposition, because Ms. Baran and Ms. Solomon each testified that they had never observed the mat in front of the ice machine in a folded or curled position. (*See* Baran Dep. at 30; Solomon Dep. at 76-77).  Defendant replies that "[a]t most, the sworn testimony establishes that Ms.

Smith had a general awareness that floor mats occasionally bunch." (Def. Reply at 6).  The Court agrees.

When asked if she had "ever observe[d] any floor mats of Wal-Mart that the edges were sticking up from the floor" or "weren't flat," Ms. Smith said yes. (Smith Dep. at 45).  She did not recall when specifically she had seen mats with stuck up edges or that were not flat. (*Id*.).  Ms. Smith also testified that she had seen "folded" mats "at Wal-Mart," meaning a mat that "does not lie flat on the floor." (*Id*. at 46).  However, "a general awareness that floor mats occasionally bunch is insufficient by itself to constitute notice of a dangerous condition." *Kasner v. Pathmark Stores, Inc*., 794 N.Y.S.2d 418, 419 (2d Dep't 2005); *see also Piacquadio v. Recine Realty Corp*., 84 N.Y.2d 967, 969 (1994) (holding that "a 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition") (quoting *Gordon*, 67 N.Y.2d at 838).  Read in the light most favorable to Plaintiff, Smith's testimony, at best, establishes that Smith had generally observed floor mats that were not flat or were folded in the Walmart store.  Thus, because "the evidence presented by [Plaintiff] to establish the defendants' notice of a recurrent dangerous condition had no relation to the area where the accident allegedly occurred," it is legally insufficient. *Kasner*, 794 N.Y.S.2d at 419. *See also Hughes v. Carrols Corp.*, 670 N.Y.S.2d 610, 611 (3d Dep't 1998) ("Although plaintiff offered the hearsay statement of one of defendant's managers, present at the time of the incident, that the floor mat was prone to becoming bunched, a general awareness that the floor mats occasionally bunched is insufficient by itself to constitute notice of a dangerous condition"); *Anderson v. Cent. Valley Realty Co*., 751 N.Y.S.2d 586, 588 (2d Dep't 2002) ("In addition, the evidence presented by the plaintiff to establish the defendant's notice of a recurrent water condition—air conditioning repairs and related ceiling leaks in the offices of two tenants on the

third floor and plumbing repairs performed in the third floor ladies' bathroom—have no relation to the area where the plaintiff fell.").[8]

The cases cited by Plaintiff do not support a different result. *Taliana v. Hines REIT Three Huntington Quadrangle, LLC*, 154 N.Y.S.3d 136 (2d Dep't 2021), was decided under the New York summary judgment standard and, in any event, involved a pool of water from a single leaking HVAC system in a break room. *See id.* at 139 ("defendants also failed to establish, prima facie, that they did not have actual or constructive notice of the alleged dangerous condition or of a recurring condition"). Similarly, *Schmidt v. DiPerno*, 808 N.Y.S.2d 413 (2d Dep't 2006), was decided under the New York standard. *See id.* at 413 ("The defendants established their prima facie entitlement to judgment as a matter of law by presenting evidence that they neither created nor had actual or constructive notice of the icy condition."). Further, in *Schmidt*, the plaintiff adduced evidence regarding recurrent pooling of water and resultant ice patches sufficient to raise a triable issue of fact as to whether the defendants had actual notice of the recurrent pooling, and thus could be charged with constructive notice of each specific recurrence of the condition. *See id.* at 414 ("The plaintiff's submissions, which included, inter alia, the affidavits of a meteorologist and a civil engineer, raised a triable issue of fact as to whether the defendants had actual notice of a recurrent dangerous condition regarding pooled water on the driveway that may have descended from the downspout, and were thus chargeable with constructive notice of each specific occurrence of the condition."). Plaintiff has provided no such evidence here.

---

[8] Plaintiff also states that "these mats had to be corrected or repositioned at least once or twice a shift." (Pl. Opp'n at 11). While no citation is provided, the Court understands this to be in reference to Ms. Baran's testimony. Ms. Baran did not recall observing the mat being folded at any time before Plaintiff's accident occurred. (Baran Dep. at 30). Ms. Baran testified that she had observed the mat in front of the ice machine out of place because of "customers using their carts," and "at times" she corrected the position of the mat. (*Id.*). Ms. Baran approximated that she'd have to reposition the mat "once or twice during [her] shift." (*Id.* at 32). When asked what "fixing" the mat would require, Ms. Baran stated: "Making sure it was in front of the door so that it was there for a water hazard. So that's where it was supposed to be." (*Id.*). Thus, this testimony does not pertain to the alleged dangerous condition here—*i.e.*, a curled or folded edge of a mat.

Finally, *D'Amato v. Vitale*, 131 N.Y.S.3d 252 (2d Dep't 2020), was likewise decided under the New York standard and, in any event, cuts against Plaintiff's arguments here, as it holds that "[a] defendant who has *actual* knowledge of a recurrent dangerous condition *in a specific area* can be charged with constructive notice of each specific reoccurrence of the condition." *Id*. at 253 (emphasis added).  Plaintiff has presented only evidence of general awareness, unbridled to any specific area.  Thus, "[i]n contrast to Plaintiff['s] cited cases, the facts of this case do not suggest Defendant had actual knowledge of a recurring dangerous condition associated with an identifiable and distinctive area," *Ricci*, 2018 WL 4308556, at *12, and the Court declines to follow them.

Accordingly, Plaintiff's evidence that Defendant may have had a "general awareness" of mats becoming folded or curled is "insufficient to defeat summary judgment on a 'recurrent hazard' theory of constructive notice." *Id*.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety.  The Clerk is respectfully requested to terminate the pending motion (Docket No. 19), enter judgment for Defendant, and close the case.

Dated:   August 1, 2023
        White Plains, New York

                                        **SO ORDERED:**


                                        _____
                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge